UNITED STATES OF AMERICA

IN THE WESTERN DISTRICT OF MICHIGAN

Latraveus Levon Dilworth,                           File No.
     Plaintiff,

                                       Hon.
     v.                                             District Court Judge

Austin Diekevers, Derek Hall,
Jeffrey Dionne, Andrew Middleton,
Roxanne Partak, Kelly Momber,
Case Weston,
     Defendants.
_____/
J. Nicholas Bostic P40653
Attorney for Plaintiff
909 N. Washington Ave.
Lansing, MI 48906
(517) 706-0132
_____/

**COMPLAINT AND JURY DEMAND**

     Plaintiff, for his complaint, states:

    1. This is a civil action seeking money damages and equitable relief for violations of the United States Constitution and federal statutes under 42 U.S.C. §1983.

    2. Plaintiff Latraveus Dilworth is, and at all relevant times was, a competent adult and a resident of Kent County in the State of Michigan.

    3. Defendant Austin Diekevers is a police officer with the City of Grand Rapids Police Department, his county of residence is unknown, and his place of conducting business is Kent County in the State of Michigan.

    4. Defendant Derek Hall is a police officer with the City of Grand Rapids Police Department, his county of residence is unknown, and his place of conducting business is Kent

1

County in the State of Michigan.

5.  Defendant Jeffrey Dionne is a police sergeant with the City of Grand Rapids Police Department, his county of residence is unknown, and his place of conducting business is Kent County in the State of Michigan.

6.  Defendant Andrew Middleton is a police officer with the City of Grand Rapids Police Department, his county of residence is unknown, and his place of conducting business is Kent County in the State of Michigan.

7.  Defendant Roxanne Partak is a police officer with the City of Grand Rapids Police Department, her county of residence is unknown, and her place of conducting business is Kent County in the State of Michigan.

8.  Defendant Kelly Momber is a police officer with the City of Grand Rapids Police Department, her county of residence is unknown, and her place of conducting business is Kent County in the State of Michigan.

9.  Defendant Case Weston is a detective with the City of Grand Rapids Police Department, his county of residence is unknown, and his place of conducting business is Kent County in the State of Michigan.

10.  This cause of action arose in Kent County, in the State of Michigan and in the Western District of Michigan.

11.  At all times relevant to this matter, Defendants were acting under color of law.

12.  This Court has jurisdiction pursuant to 28 USC §§1331 and 1343(a)(4) for the federal claims.

## GENERAL ALLEGATIONS

13. Paragraphs 1-12 are incorporated herein by reference.

14. On June 29, 2020 at approximately 8:59 p.m., police were called to Kensington Street at Eton Street in the City of Grand Rapids.

15. Police arrived to find a car crashed into a tree which was occupied by Isaiah Slater and Genora Coleman.

16. An interview with Isaiah revealed that a person with the street name of "Toon" had reached into the car and jerked the wheel causing the crash.

17. He also said that another male had a gun and fired a gun in the direction of her vehicle.

18. An interview with Genora revealed the same information regarding "Toon" and the other male but she added that the handgun was black.

19. Genora also said that the males left in a Silver Toyota but two other vehicles were with "Toon" described as a black SUV and another unknown vehicle.

20.  An unidentified family member of Isaiah said that "Toon's" real name is Lonnie Lashun Dilworth.

21. Grand Rapids Police Officer Melissa Moninger interviewed Patricia Slater who stated that "Toon" was the male that pulled a handgun and was firing at Isaiah's vehicle until it crashed into a tree.

22. When Patricia went outside to yell at "Toon," he entered a nearby vehicle and left in an unknown direction.

23. Patricia said there was another man with "Toon" but she did not see him shoot.

24. Also on June 29, 2020 at approximately 11:55 p.m, police were called back to the area

3

for shots fired and witnesses described a black or dark blue Chevrolet Trailblazer with heavy damage on all sides flee the area.

25. On July 18, 2020, Defendant Austin Diekevers was on patrol and made query on a license plate on a Chevrolet Impala.

26. The response to Defendant Diekevers was that the registered owner of the 2005 Chevrolet was Lonnie Lashaun Dilworth.

27. Defendant Diekevers was aware of an e-mail from Detective Weston that Lonnie was a "person of interest" in a shooting on June 29, 2020, that he had warrants for his arrest, and that he may be carrying a handgun.

28. Defendant Diekevers claimed that he saw a male in the back seat that looked similar to Lonnie Dilworth based on his hair and facial hair features.

29. Defendant Diekevers temporarily lost the vehicle but then located it in a parking lot.

30. After calling for additional units, the vehicle pulled out of the parking lot.

31. Defendant Hall claimed that he could also see the male in the back seat and also believed that male looked similar to Lonnie Dilworth.

32. Defendant Sgt. Dionne instructed Defendants Diekevers, Hall, Middleton, Partak and Momber to stop the vehicle.

33. Defendant Hall ordered the occupants out of the vehicle which was being driven by Plaintiff Latraveus Dilworth.

34. Plaintiff explained that the vehicle belonged to his brother, Lonnie, but Lonnie was not in the car.

35. Defendant Middleton patted down Plaintiff for weapons finding none, handcuffed him,

4

and placed Plaintiff in the back of his patrol car.

36. Defendant Middleton asked Plaintiff if there were weapons in the car and Plaintiff explained that there were weapons in a backpack in the trunk.

37. The three other passengers were ordered out of the vehicle and all – including Plaintiff – were placed in handcuffs.

38. Defendant Diekevers opened a door to a police car in which Plaintiff was seated and read him the constitutional rights to remain silent and to have counsel.

39. Defendant Dionne asked Plaintiff for consent to check the firearms in the trunk and he gave consent.

40. Defendant Hall had already opened the trunk and had already discovered two handguns in the back pack.

41. Defendant Diekevers seized the handguns.

42. Plaintiff then explained that on June 29, 2020, Lonnie and Isaiah got into a physical altercation.

43. When Isaiah went to his vehicle to get a firearm, Plaintiff also went to his vehicle and retrieved a handgun from his vehicle.

44. Isaiah was driving his own vehicle and Lonnie was hanging onto the driver's door as the vehicle was moving.

45. Isaiah shot Lonnie in the arm while driving and then crashed into a tree.

46. Plaintiff believed Isaiah was about to shoot Lonnie again who was now on the ground so he fired shots into the rear of Isaiah's vehicle.

47. Lonnie was able to leave the area and they both entered a vehicle and left the area.

48. On July 18, 2020, Defendant Diekevers then seized the Chevrolet Impala.

49. Defendant Diekevers also seized Plaintiff's cellular phone.

50. Plaintiff asked Defendant Diekevers to release all of his property to his wife Barbara who was also a passenger in the vehicle.

51. Plaintiff was taken to the Kent County Jail and lodged by Defendant Diekevers.

52. All Defendants have received and completed training to be certified police officers in the State of Michigan.

## COUNT I – UNLAWFUL SEIZURE
(42 U.S.C. § 1983 - Fourth Amendment)

53.  Paragraphs 1-52 are incorporated herein by reference.

54.  On July 18, 2020, no Defendant had reason to believe that the driver, Plaintiff, was the wanted person, Lonnie Dilworth.

55. On July 18, 2020, no Defendant had reason to believe that the vehicle driven by Plaintiff was involved in the June 29, 2020 incident.

56. On July 18, 2020, no Defendant had reason to believe that Plaintiff was involved in the June 29, 2020 incident.

57. On July 18, 2020, Defendant Dionne ordered the other Defendants to conduct a traffic stop on Plaintiff, the vehicle he was driving, and the passengers.

58. Defendants conducted a "high risk traffic stop" on the vehicle.

59. Defendants had no reason to believe that any person inside the vehicle was armed or that the vehicle contained firearms or other harmful objects.

60. Defendant Hall used the overhead and car mounted emergency red and blue lights on his patrol car to obligate Plaintiff to stop and Plaintiff complied.

6

61. Defendant Hall ordered Plaintiff to get out of the vehicle and Plaintiff complied with all commands.

62. Defendant Middleton placed handcuffs on Plaintiff, conducted a pat-down search of Plaintiff's person, and locked him into the back of a police car.

63. Defendant Partak blocked Plaintiff's path with her patrol vehicle.

64. Defendant Momber blocked Plaintiff's path with his patrol vehicle.

65. Defendant Momber aimed his firearm at Plaintiff.

66. Plaintiff was transported by Defendant Diekevers to the Kent County Jail where he was lodged.

67. Defendants did not have a warrant or probable cause and a recognized exception to the warrant requirement to seize Plaintiff.

68. Defendants did not have a reasonable, articulable suspicion that Plaintiff was armed or that he was or had recently engaged in any criminal activity.

69. Plaintiff made no threats to any Defendant.

70. Plaintiff was cooperative.

71. Plaintiff was not armed.

72. Defendants' seizure of Plaintiff on July 18, 2020 was unreasonable and in violation of the Fourth Amendment to the United States Constitution.

73. On July 18, 2020, it was clearly established that a seizure of a person had to be based on a valid and judicially issued warrant, supported by probable cause and a valid, recognized exception to the warrant requirement, or based on a reasonable, articulable suspicion that the person had been, was, or was about to engage in specified criminal activity.

74. No reasonably trained and experienced police officer would have believed that the seizure of Plaintiff on July 18, 2020 was lawful.

75. Plaintiff was damaged as a result of the unlawful seizure of his person in that he suffered the loss of the protection of the Fourth Amendment to the United States Constitution, emotional distress, embarrassment, humiliation, anxiety, and mental anguish.

WHEREFORE, Plaintiff requests that this Court enter judgment in favor of Plaintiff and against all Defendants in an amount not less than $25,000.00 each.

### COUNT II – UNLAWFUL SEARCH
(42 U.S.C. § 1983 - Fourth Amendment)

76. Paragraphs 1 – 75 above are incorporated herein by reference.

77. Plaintiff did not give consent for Defendant Middleton to conduct a pat-down search.

78. Defendant Middleton had no reasonable, articulable suspicion or probable cause to believe that Plaintiff was armed.

79. The pat-down search of Plaintiff by Defendant Middleton on July 18, 2020 was unreasonable.

80. The pat-down search of Plaintiff by Defendant Middleton on July 18, 2020 violated Plaintiff's rights to privacy guaranteed by the Fourth Amendment to the United States Constitution.

81. On July 18, 20202, it was clearly established that a pat-down search had to be based on at least a reasonable, articulable suspicion that the person is presently armed.

82. No reasonably trained and experienced police officer would have believed that the pat-down search of Plaintiff on July 18, 2020 was lawful.

8

83. Plaintiff was damaged as a result of the unlawful pat-down search of his person in that he suffered the loss of the protection of the Fourth Amendment to the United States Constitution, emotional distress, embarrassment, humiliation, anxiety, and mental anguish.

WHEREFORE, Plaintiff requests that this Court enter judgment in favor of Plaintiff and against Defendant Middleton in amount not less than $25,000.00.

## COUNT III – FALSE ARREST
(42 U.S.C. § 1983 - Fourth Amendment)

84. Paragraphs 1 through 83 above are incorporated herein by reference.

85. Defendant Detective Weston and Defendant Sgt. Dionne instructed Defendant Diekevers to transport Plaintiff from the scene to the Kent County Jail where he was lodged.

86. Defendant Diekevers had been involved in the July 18, 2020 incident from the beginning and knew or should have known that probable cause did not exist to arrest Plaintiff.

87. The Fourth Amendment of the U.S. Constitution protects against arrests based on less than probable cause.

88. Defendants may only arrest or cause the arrest of someone with a warrant or probable cause.

89.  Defendants did not have a warrant or probable cause to arrest Plaintiff on July 18, 2020

90. On July 18, 2020, all Defendants participated in the arrest of Plaintiff by stopping his vehicle using emergency lights or blocking his path, ordering him out of his car, placing handcuffs on him, locking him in the back of a police car, and transporting him to jail and locking him in a cell.

9

91.   As of July 18, 2020, it was clearly established law that law enforcement officers who arrest or cause arrests without probable cause are violating the Fourth Amendment of the United States Constitution.

92.   On July 18, 2020, no reasonably trained law enforcement officer would have believed that probable cause for an arrest existed under the circumstances in this case.

93.   The conduct of the Defendants caused Plaintiff to be deprived of his liberty.

94. Plaintiff was damaged by the conduct of the Defendants in that Plaintiff suffered a loss of liberty, stress, anxiety, embarrassment, and humiliation.

WHEREFORE, Plaintiff requests that this Court enter judgment in his favor and against each Defendant in an amount not less than $25,000.00 each.

## COUNT IV – UNREASONABLE SEIZURE OF PHONE
### (42 U.S.C. § 1983 - Fourth Amendment)

95.   Paragraphs 1 through 94 above are incorporated herein by reference.

96.   In the course of the unlawful detention and unlawful pat down on July 18, 2020, Defendant Diekevers seized Plaintiff's cellular telephone as evidence.

97.   Defendant Diekevers did not have probable cause or a reasonable, articulable suspicion to believe that the cellular telephone was contraband, evidence, or a weapon.

98.   Plaintiff did not give consent for Defendant Diekevers to seize the cellular telephone.

99.   Defendant Diekevers did not have a warrant to seize the cellular telephone.

100.  The seized cellular telephone was the lawful property of Plaintiff.

101.  Defendant Diekevers continued to possess Plaintiff's cellular telephone for several weeks.

10

102.  Defendant Diekevers' conduct in seizing the cellular telephone was unreasonable pursuant to the Fourth Amendment to the United States Constitution and a violation of Plaintiff's rights.

103.  The conduct of Defendant Diekevers was a direct and approximate cause of damage to Plaintiff as described herein.

104.  The conduct of Defendant Diekevers was a direct and approximate cause of the violations of the Plaintiff's Fourth Amendment rights to be free from unreasonable seizures.

105.  As of July 18, 2020, it was clearly established that the Fourth Amendment to the United States Constitution allows a seizure only upon probable cause that the item is contraband, a weapon, or evidence and where a warrant is not required.

106.  At the time of this seizure, Defendant Diekevers possessed no information to establish that the cellular telephone was evidence and no exception to the warrant requirement existed.

107.  No reasonably trained or experienced police officer would have believed it lawful to seize the cellular telephone under the circumstances presented.

108.   The actions of Defendant Diekevers was intentionally designed to inflict humiliation, embarrassment, and mental anxiety to Plaintiff.

109.  The actions of Defendant Diekevers caused excessive anxiety, stress, inconvenience, and emotional distress to Plaintiff.

110.  Defendant Diekevers engaged in deliberate conduct in violation of clearly established constitutional requirements.

111.  The conduct of Defendant Diekevers entitles Plaintiff to exemplary damages.

Wherefore Plaintiff requests that this Honorable Court enter judgment in favor of Plaintiff

and against Defendant Diekevers in an amount of not less than $25,000.00 and for exemplary damages as determined by a jury.

## COUNT IV – UNREASONABLE SEIZURE OF FIREARMS
### (42 U.S.C. §1983 - Fourth Amendment)

112.   Paragraphs 1 through 111 above are incorporated herein by reference.

113.   All of the information Defendants obtained before seizing the firearms was unlawfully obtained as a result of the unconstitutional stop and unconstitutional arrest of Plaintiff.

114.   The Fourth Amendment of the U.S. Constitution protects against unreasonable seizures of persons or property.

115.   As of July 18, 2020, it was clearly established that probable cause could not be established based on unlawfully obtained information.

116.   Defendant Diekevers may only seize personal property based on lawfully obtained probable cause or with a warrant.

117.   Defendant Diekevers did not have a warrant to seize the property and did not have lawfully obtained probable cause.

118.   The conduct of Defendant Diekevers caused a violation of Plaintiff's constitutional rights under the Fourth Amendment.

119.   As of July 18, 2020, it was clearly established that law enforcement officers who seize personal property without probable cause are violating the Fourth Amendment of the United States Constitution.

120.   As of July 18, 2020, no reasonably trained law enforcement officer would have believed that the seizure of the firearms on July 18, 2020 without probable cause would not violate the constitution.

121. Plaintiff was damaged by the conduct of Defendant Diekevers in that Plaintiff suffered stress, anxiety, embarrassment, and humiliation.

WHEREFORE, Plaintiff requests that this Court enter judgment in their favor and against Defendant Diekevers in an amount not less than $25,000.00.

### COUNT V – UNREASONABLE SEIZURE OF VEHICLE AND CONTENTS
(42 U.S.C. §1983 - Fourth Amendment)

122. Paragraphs 1 through 121 above are incorporated herein by reference.

123. Defendants Diekevers and Partak may only seize a vehicle and its contents with a warrant or probable cause and an exception to the warrant requirement.

124. On July 18, 2020, Defendants Diekevers and Partak seized the vehicle from Plaintiff's lawful possession and seized Plaintiff's contents in the vehicle.

125. Plaintiff was not allowed by the towing company to access the vehicle to obtain the ownership paperwork or his property.

126. The vehicle was ultimately sold by the towing company along with all of Plaintiff's contents without notice to Plaintiff and without being given an opportunity to recover the vehicle or its contents.

127. On July 18, 2020, Defendants Diekevers and Partak caused the seizure of Plaintiff's property (vehicle and its contents).

128. As of July 18, 2020, it was clearly established law that law enforcement officers could only seize property with a warrant or without probable cause and an exception to the warrant requirement when that property was contraband or evidence.

129. On July 18, 2020, Plaintiff's vehicle and the contents of the vehicle were not evidence or contraband.

13

130.  As of July 18, 2020, no reasonably trained law enforcement officer would have believed that the seizure of Plaintiff's vehicle or its contents would not violate the constitution.

131.  The conduct of the Defendants Diekevers and Partak caused Plaintiff to be deprived of his vehicle and its contents.

132. Plaintiff was damaged by the conduct of Defendants Diekevers and Partak in that he lost the possession and use of the vehicle and its contents including but not limited to

Black Backpack

Jewelry

Micheal Khors Watch

1 pair Gold Ruby & Diamond Earrings (Studs)

Gold & Silver Diamond Encrusted Earrings 1 With a broken stim (studs)

14K Gold Herringbone Necklace

2 Gold Cuban link 1 30 inches other 22 with a Diamond Encrust

1 White Gold diamond Tennis chain

1 Pair of Cartier Sunglasses Frames

Keys to house

Keys to a Lexus which led to seizure and complete loss of the vehicle and its contents because Plaintiff was unable to move it from the public roadway.

133. Plaintiff was damaged by the conduct of Defendants Diekevers and Partak in that he suffered extreme inconvenience, the replacement costs or the personal property, stress, anxiety, embarrassment, and humiliation.

14

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor and against Defendants Diekevers and Partak in an amount not less than $25,000.00 each.

### COUNT VI – MALICIOUS PROSECUTION
(42 U.S.C. §1983 - Fourth Amendment)

134.  Paragraphs 1 through 133 above are incorporated herein by reference.

135. On or about July 20, 2020, Defendant Weston prepared a warrant request for Plaintiff and submitted it to the Kent County Prosecutor's Office for criminal charges.

136.  Defendant Weston included in the warrant request the investigative reports prepared by all Defendants.

137. Defendant Weston swore to a warrant request against Plaintiff for Assault with Intent to do great bodily harm less than murder knowing that Plaintiff had acted in defense of Plaintiff's brother.

138.  The material omissions from Defendant Weston's investigative report about the defense of others influenced the initiation of criminal charges against Plaintiff.

139.  Notwithstanding being aware of the fact that Plaintiff had acted in defense of is brothr, Defendant Weston initiated, continued and maintained the prosecution of Plaintiff.

140.  Defendant Weston's disregard of the circumstance of Plaintiff defending his brother on or about July 20, 2020 make his withholding of the information about the defense of others a knowing and reckless act which was material to refuting probable cause.

141. Defendant Weston participated in and influenced the maintenance and continuation of the prosecution knowing that probable cause did not exist.

142.  Plaintiff was arrested on July 18, 2020 and remained in jail until July 20, 2020 at which time he posted bond.

15

143. Plaintiff was arraigned on July 20, 2020.

144. Plaintiff's pretrial release orders of July 20, 2020 imposed the following restrictive conditions on him:

   a.   Mandatory appearance for all court proceedings.

   b.   Not leave the state of Michigan without permission of the court.

   c.   A requirement to report any change of address or telephone number.

   d.   Prohibited from possessing or purchasing a firearm or other dangerous weapon.

   e.   A requirement that he routinely report to pretrial services.

   f.   A prohibition on consuming alcoholic beverages.

   g.   Live at a specified address.

145. All criminal proceedings against Plaintiff were resolved in his favor on August 25, 2020 when the state district court entered an order of nolle prosequi.

146. As of July 18, 2020, it was clearly established law that a prosecution could not be initiated or maintained without probable cause.

147. Defendant Weston's conduct was a direct and proximate cause of harm to Plaintiff in the form of inconvenience, humiliation, stress, anxiety, attorney fees, and restrictions on his liberty.

   WHEREFORE, Plaintiffs request that this Court enter judgment in their favor and against all Defendant Weston in an amount not less than $25,000.00.

## **REQUEST FOR RELIEF**

   WHEREFORE, Plaintiffs request that judgment enter for Plaintiffs and

   1. against all Defendants as specified in the individual counts as asserted above;

   2. against all individual Defendants for exemplary damages in an amount not less than $25,000.00 each;

16

3. against all Defendants for attorney fees as allowed by 42 USC §1988;

4. against all Defendants for interest on the award to the date of filing of this complaint;

5. granting such other relief as allowed by law.

Signature by Plaintiff:

_2-4-2022_
Date

_____
Latraveus Dilworth

Signature by Attorneys:

_2/4/2022_
Date

_____
J. Nicholas Bostic P40653
Lead Attorney for Plaintiff

_2/4/2022_
Date

_____
Brendon G. Basiga P69369
Co-Counsel for Plaintiff

## JURY DEMAND

Plaintiff hereby demands trial by jury on all counts.

_2/04/2022_
Date

_____
J. Nicholas Bostic P40653
Attorney for Plaintiffs
909 N. Washington Ave.
Lansing, MI 48906
(517)706-0132

17